SCANNED
DATE: 7-6-04
BY:

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DIAMOND WINDOWS & DOORS
MFG., INC.

              Plaintiff,

v.

CARLSON WEGOMA, LLC
a/k/a WEGOMA, INC.

              Defendant.

Civil Action No. 04-11296 MLW

**ANSWER AND COUNTERCLAIM**

Defendant Carlson Wegoma, LLC ("Defendant" or "Carlson Wegoma"), answers the numbered paragraphs of the Complaint as follows:

1. The Defendant is without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 1 of the Complaint.

2. The Defendant admits the allegations in Paragraph 2 of the Complaint.

3. The Defendant is without knowledge or information sufficient to form a belief regarding the allegations in Paragraph 3 of the Complaint.

4. The Defendant admits the allegations in Paragraph 4 of the Complaint.

5. The allegations in Paragraph 5 of the Complaint state legal conclusions for which no response is required.

6. The allegations in Paragraph 6 of the Complaint state legal conclusions for which no response is required.

12. In response to the allegations in Paragraph 12 of the Complaint, the Defendant states that its Sales Manager, Richard Wilson, visited Plaintiff's factory on several occasions and was shown the Plaintiff's manufacturing processes of windows and doors.

13. In response to the allegations in the first and second sentence of Paragraph 13 of the Complaint, the Defendant states that its Sales Manager, Richard Wilson, visited Plaintiff's factory on several occasions and was shown the Plaintiff's manufacturing processes of windows and doors, including the window corner cleaning process. Further answering, the Defendant states that Mr. Wilson was also shown various machines that Plaintiff used to accomplish its manufacturing, cleaning and other processes. The Defendant denies the remaining allegations in Paragraph 13 of the Complaint.

14. In response to the allegations in Paragraph 14 of the Complaint, the Defendant states that Mr. Wilson was shown the T-slot routing function that Plaintiff performed on its windows.

15. In response to the allegations in Paragraph 15 of the Complaint, the Defendant states that its Sales Manager, Richard Wilson, had several meetings with representatives of the Plaintiff concerning Plaintiff's requests and requirements. Further answering, the Defendant states that the rights and obligations of the parties are governed by the Contract which speaks for itself. The Defendant denies the remaining allegations in Paragraph 15 of the Complaint.

16. The Defendant denies the allegations in Paragraph 16 of the Complaint.

17. The Defendant admits that in approximately June 2003, Plaintiff sent Defendant two sashes. The Defendant denies the remaining allegations in Paragraph 17 of the Complaint.

18. The Defendant admits that in approximately August or September 2003, Plaintiff sent Defendant approximately 20 upper sashes and approximately 20 lower sashes for the purpose of processing these sashes through the THX Machine. The Defendant denies the remaining allegations in Paragraph 18 of the Complaint.

19. The Defendant denies the allegations in Paragraph 19 of the Complaint.

20. The Defendant denies the allegations in Paragraph 20 of the Complaint.

21. In response to the allegations in Paragraph 21 of the Complaint, the Defendant states that the rights and obligations of the parties are governed by the Contract which speaks for itself. The Defendant denies the remaining allegations in Paragraph 21 of the Complaint.

22. The Defendant denies the allegations in Paragraph 22 of the Complaint.

23. The Defendant denies the allegations in Paragraph 23 of the Complaint.

24. The Defendant denies the allegations in Paragraph 24 of the Complaint.

25. In response to the allegations in Paragraph 25 of the Complaint, the Defendant states that the rights and obligations of the parties are governed by the Contract which speaks for itself. The Defendant denies the remaining allegations in Paragraph 25 of the Complaint.

26. The Defendant denies the allegations in Paragraph 26 of the Complaint.

27. In response to the allegations in Paragraph 27 of the Complaint, the Defendant admits that Plaintiff paid $135,150 to Defendant for the THX Machine.

Further answering, the Defendant states that the rights and obligations of the parties are governed by the Contract which speaks for itself. The Defendant is without knowledge or information sufficient to form a belief regarding the remaining allegations in Paragraph 27 of the Complaint.

28. The Defendant denies the allegations in Paragraph 28 of the Complaint.

29. The Defendant admits that when the THX Machine was delivered to the Plaintiff in 2003, it did not include a T-slot routing function. The Defendant denies the remaining allegations in Paragraph 29 of the Complaint.

30. The Defendant denies the allegations in Paragraph 30 of the Complaint.

31. The Defendant denies the allegations in Paragraph 31 of the Complaint.

32. The Defendant denies the allegations in Paragraph 32 of the Complaint.

33. In response to the allegations in Paragraph 33 of the Complaint, the Defendant states that on or about January 10, 2004, Plaintiff and Defendant entered into an amendment to the Contract ("Amendment"), whereby Defendant agreed to modify the THX Machine to include T-slot routers and re-install it at Plaintiff's place of business, and Plaintiff agreed to pay for this modification and re-installation. Further answering, the Defendant states that the rights and obligations of the parties are governed by the amended Contract which speaks for itself.

34. The Defendant admits the allegations in Paragraph 34 of the Complaint.

35. In response to the allegations in Paragraph 35 of the Complaint, the Defendant states that the rights and obligations of the parties are governed by the amended Contract which speaks for itself. The Defendant denies the remaining allegations in Paragraph 35 of the Complaint.

36. In response to the allegations in Paragraph 36 of the Complaint, the Defendant states that the rights and obligations of the parties are governed by the amended Contract which speaks for itself. The Defendant denies the remaining allegations in Paragraph 36 of the Complaint.

37. The Defendant admits the allegations in the first sentence of Paragraph 37 of the Complaint. The Defendant denies the allegations in the second sentence of Paragraph 37 of the Complaint.

38. The Defendant denies the allegations in Paragraph 38 of the Complaint.

39. The Defendant admits the allegations in Paragraph 39 of the Complaint.

40. The Defendant admits the Plaintiff still has possession of the THX Machine and denies the remaining allegations in Paragraph 40 of the Complaint.

41. The Defendant admits the allegations in Paragraph 41 of the Complaint.

## COUNT I

42. The Defendant incorporates by reference the answers to the allegations contained in Paragraphs 1 through 41 of the Complaint as though the same were fully set forth herein.

43. The Defendant denies the allegations in Paragraph 43 of the Complaint.

44. The Defendant denies the allegations in Paragraph 44 of the Complaint.

45. The Defendant denies the allegations in Paragraph 45 of the Complaint.

46. The Defendant denies the allegations in Paragraph 46 of the Complaint.

## COUNT II

47. The Defendant incorporates by reference the answers to the allegations contained in Paragraphs 1 through 46 of the Complaint as though the same were fully set forth herein.

48. The Defendant denies the allegations in Paragraph 48 of the Complaint.

49. The Defendant denies the allegations in Paragraph 49 of the Complaint.

50. The Defendant denies the allegations in Paragraph 50 of the Complaint.

51. The Defendant admits that it offers and provides engineering assistance on request and denies the remaining allegations in Paragraph 51 of the Complaint.

52. The Defendant denies the allegations in Paragraph 52 of the Complaint.

53. The Defendant denies the allegations in Paragraph 53 of the Complaint.

54. In response to the allegations in Paragraph 54 of the Complaint, the Defendant admits that it sold the Plaintiff a THX Twinhead Weldseam Cleaner pursuant to the Contract.

55. The Defendant denies the allegations in Paragraph 55 of the Complaint.

## COUNT III

The Defendant incorporates by reference the answers to the allegations contained in Paragraphs 1 through 55 of the Complaint as though the same were fully set forth herein.

56. The Defendant denies the allegations in Paragraph 56 of the Complaint.

57. The Defendant denies the allegations in Paragraph 57 of the Complaint.

58. The Defendant denies the allegations in Paragraph 58 of the Complaint.

59. The Defendant denies the allegations in Paragraph 59 of the Complaint.

60. The Defendant denies the allegations in Paragraph 60 of the Complaint.

## COUNT IV

61.     The Defendant incorporates by reference the answers to the allegations contained in Paragraphs 1 through 60 of the Complaint as though the same were fully set forth herein.

62.     The Defendant denies the allegations in Paragraph 62 of the Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff has failed to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiff's claims are barred in whole or in part by the terms of the Contract, as amended.

### Third Affirmative Defense

Plaintiff's claims are barred in whole or in part because it breached the Contract.

### Fourth Affirmative Defense

Plaintiff's claims are barred in whole or in part by the choice of law provisions in the Contract.

### Fifth Affirmative Defense

Plaintiff's claims are barred in whole or in part by the applicable choice of law rules.

### Sixth Affirmative Defense

Plaintiff's claims are barred in whole or in part because the jurisdictional requirements of M.G.L. c. 93A.

### Seventh Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

### Eighth Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrine of estoppel.

### Ninth Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrine of laches.

## COUNTERCLAIM

### Parties

1. Carlson Wegoma, LLC ("Carlson Wegoma") is a Nebraska corporation with a principal place of business located at 2368 East Enterprise Parkway in Twinsburg, Ohio 44087.

2. On information and belief, Diamond Windows & Doors Mfg., Inc. ("Diamond") is a Massachusetts corporation with a principal place of business located at 99 East Cottage Street, Boston, MA 02125.

### Jurisdiction and Venue

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

4. Venue is proper in this district under 28 U.S.C. § 1391(a).

### Factual Background

5. On or about May 30, 2003, Carlson Wegoma and Diamond entered into a contract ("Contract") in which Diamond agreed to purchase three products from Carlson Wegoma, including a THX Twinhead Weldseam Cleaner ("THX Machine"). A copy of the Contract is attached hereto at Tab A.

6. The document attached at Tab A is a true and accurate copy of the Contract entered into by Carlson Wegoma and Diamond.

7. Under the terms of the Contract, Diamond agreed that it would pay Carlson Wegoma a total of $152,000.

8. Under the terms of the Contract, Diamond agreed that it would pay Carlson Wegoma a total of $135,150 for the THX Machine.

9. Diamond paid Carlson Wegoma a total of $152,000.

10. Diamond paid Carlson Wegoma a $45,600 down payment and paid an additional $76,000 to Carlson Wegoma prior to the shipment of the THX Machine and the other two products. On or about October 27, 2003, Diamond made a third payment of $31,400 to Carlson Wegoma.

11. Under the Contract, delivery of the THX Machine was to occur "12 to 14 weeks after receipt of order, down payment, and all relevant technical documentation, based upon [Carlson Wegoma's] current production schedule."

12. With regard to the delivery date of the THX Machine, the Contract further states, in relevant part,

> Quoted lead-time is dependent upon receipt of technical specifications, drawings, and customer profile. Technical specifications and drawings must be received at [Carlson] WEGOMA within two weeks of receipt of order, and profile must arrive at least three weeks prior to machine acceptance in Twinsburg, OH. Failure to meet this timing may result in correspondence delays in completion of your equipment.

13. Diamond did not furnish Carlson Wegoma with the technical drawings and documentation necessary for Carlson Wegoma to configure its products to meet Diamond's needs and requirements, until July 9, 2003.

14. The technical drawings and documentation that Diamond provided to Carlson Wegoma make no reference to T-slots.

15. With the exception of the fabrication drawings furnished by Vinyl Source, Diamond never provided Carlson Wegoma with any technical specifications concerning Diamond's intended use of the THX Machine prior to its delivery to Diamond in 2003.

16. In approximately August or September 2003, Carlson Wegoma informed Diamond that the THX Machine was complete and requested that Diamond visit its factory in Twinsburg, Ohio so that Diamond could formally accept the THX Machine and receive training on its operation and maintenance.

17. In response to this invitation, Diamond declined to visit Carlson Wegoma's factory in Twinsburg, Ohio and participate in a formal acceptance of the THX Machine prior to its shipment to Diamond.

18. On September 26, 2003, Carlson Wegoma shipped to Diamond the three products purchased under the Contract, including the THX Machine.

19. The THX Machine was delivered to Diamond.

20. On or about November 10, 2003, Carlson Wegoma installed the THX Machine in Diamond's facility.

21. In November 2003, Mr. YiFeng You, of Diamond, contacted Carlson Wegoma to complain about the THX Machine.

22. In November 2003, Diamond's sole complaint about the THX Machine was that it did not perform T-slot routing.

23. When Mr. You contacted Carlson Wegoma in November 2003, this was the first time that Diamond informed Carlson Wegoma of its desire to perform T-slot routing with the THX Machine.

24. In November 2003, Diamond did not complain about or report any defect in the THX Machine or any of Carlson Wegoma's products sold pursuant to the Contract.

25. The Contract does not include or refer to T-slot routers or T-slot routing capability.

26. After Diamond's November 2003 complaint, Carlson Wegoma contacted Diamond on numerous occasions and visited Diamond's factory in order to meet with Mr. You about his concerns.

27. On December 12, 2003, Mr. You wrote a letter to Richard Wilson, Carlson Wegoma's Regional Sales Manager, in which Mr. You accused Carlson Wegoma of false advertising and demanded that Mr. Wilson personally come to Diamond's place of business "ASAP."

28. Mr. You's December 12, 2003 letter further claimed that Carlson Wegoma's products were "a BIG rip off" and that if Diamond's needs were not met that it was entitled to a full refund and the repayment of interest charged by Diamond's bank on the loan covering the purchase price under the Contract.

29. In order to satisfy Diamond, in January 2004, Carlson Wegoma offered to modify the THX Machine which Diamond purchased from Carlson Wegoma to add T-slot routers ("Modification").

30. In order to satisfy Diamond, Carlson Wegoma offered to make the Modification in exchange for payment for the cost to Carlson Wegoma of adding this T-

slot routing feature. By making the Modification at cost, Carlson Wegoma would not receive any profit from this transaction.

31.     Carlson Wegoma was not required to make this Modification pursuant to the terms of the Contract prior to its amendment.

32.     On or about January 9, 2004, Carlson Wegoma and Diamond entered into an amendment to the Contract ("Amendment"), whereby Carlson Wegoma agreed to make the Modification to the THX Machine to include T-slot routers and re-install it at Diamond's place of business, and Diamond agreed to pay for this modification and re-installation. A copy of the Amendment is attached hereto at Tab B.

33.     The document attached at Tab B is a true and accurate copy of the Amendment entered into by Carlson Wegoma and Diamond.

34.     Pursuant to the Amendment, Carlson Wegoma agreed to modify the THX Machine to include T-slot routers.

35.     Under the Amendment, Diamond agreed to pay Carlson Wegoma $20,000 for the Modification upon re-installation of the THX Machine in Diamond's place of business. Under the Amendment, the price of the Modification charged by Carlson Wegoma of $20,000 is the cost to Carlson Wegoma of making this Modification.

36.     In January 2004, Carlson Wegoma received the THX Machine from Diamond at its Twinsburg, Ohio factory.

37.     In February 2004, Diamond shipped sample sashes ("Sample Sashes") to Carlson Wegoma for the purpose of having the Sample Sashes processed through the modified THX Machine and returned to Diamond for its approval.

38.     Carlson Wegoma made the Modification to the THX Machine.

39. After completing the Modification, Carlson Wegoma processed the Sample Sashes through the modified THX Machine.

40. On February 27, 2004, Carlson Wegoma shipped the processed Sample Sashes to Diamond for its approval.

41. On March 4, 2004, Diamond notified Carlson Wegoma that it approved the Sample Sashes.

42. On March 4, 2004, Carlson Wegoma shipped the modified THX Machine to Diamond.

43. Diamond has acknowledged receipt of the modified THX Machine in 2004.

44. Under the Contract, Diamond agreed to pay for any additional parts and service related to the THX Machine.

45. In connection with the THX Machine, Diamond requested and Carlson Wegoma provided parts totaling an additional $705.77 and services totaling an additional $1,725.00 ("Additional Parts and Service").

46. Diamond still has the THX Machine in its possession.

47. Diamond has made no payments to Carlson Wegoma under the Amendment or for the Additional Parts and Service.

48. Under the Contract as amended, Diamond currently owes Carlson Wegoma a total amount of $22,430.77 ("Indebtedness").

49. Carlson Wegoma has demanded payment of the Indebtedness from Diamond but Diamond has failed to pay all or even some of the Indebtedness.

50. Under the terms of the Contract, except as otherwise provided for by Ohio Revised Code Sections 1302.92 and 1302.93 (B) and (C), the only remedy available to Diamond in the event of breach by Carlson Wegoma is, at Carlson Wegoma's sole discretion, it may, credit Diamond's account, or replace, or repair any goods that it manufactured or sold which it deems to have been defective when supplied.

51. The Contract states, in relevant part,

> This contract between [Carlson] WEGOMA and [Diamond] is executed under and shall be governed by the laws of the State of Ohio, and the rights of all parties, the construction and effect of every provision hereof, are subject to and shall be construed in accordance with the laws of the State of Ohio.

52. The Contract states, in relevant part,

> On all returned, unused goods, [Carlson] WEGOMA is entitled to a restocking charge computed in accordance with its current price list, i.e. the price list in effect at the time [Carlson] WEGOMA accepts [Diamond]'s order.

53. When the Contract was entered into, Carlson Wegoma's price list provided for a restocking charge of 15% of the total purchase price of the goods being returned.

54. Diamond agreed to pay a restocking fee of 15% of the total purchase price of the THX Machine.

55. The Contract is a fully integrated contract which expressly constitutes the final and complete expression of the terms of the contract between Carlson Wegoma and Diamond concerning the subject matter set forth therein.

56. Carlson Wegoma has met any and all conditions precedent to payment.

## COUNT I

### Breach of Contract

57. Carlson Wegoma realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 56 as if fully set forth herein.

58. The amended Contract, constitutes a valid, binding and enforceable contract between Carlson Wegoma and Diamond.

59. Carlson Wegoma has performed in full under the amended Contract.

60. Diamond has breached the amended Contract by failing to make certain payments to Carlson Wegoma.

61. Carlson Wegoma has been damaged as a direct and proximate result of Diamond's breach.

## COUNT II

### Quantum Meruit

62. Carlson Wegoma realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 61 of this Counterclaim as though fully set forth herein.

63. Carlson Wegoma conferred a measurable benefit of $22,430.77 upon Diamond.

64. A reasonable person in Diamond's position would have expected to pay for the goods and services rendered by Carlson Wegoma in connection with the THX Machine.

65. Carlson Wegoma furnished the goods and services in connection with the THX Machine with a reasonable expectation of receiving compensation from Diamond.

## COUNT III

### Violation of M.G.L. Chapter 93A

66. Carlson Wegoma realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 65 of this Counterclaim as though fully set forth herein.

67. The actions described herein have taken place primarily and substantially in the Commonwealth of Massachusetts.

68. Carlson Wegoma and Diamond are engaged in trade or commerce within the meaning of M.G.L. c. 93A.

69. Diamond has acted unfairly and/or deceptively, in violation of M.G.L. c. 93A. Diamond's actions in this regarding were knowing and willful, within the meaning of the statute.

70. Carlson Wegoma has been harmed as a result of the unfair and deceptive actions of Diamond.

### DEMAND FOR JURY TRIAL

Plaintiff-in-counterclaim, Carlson Wegoma hereby demands a jury trial in the above-captioned action.

WHEREFORE, Plaintiff-in-counterclaim, Carlson Wegoma requests that the Court enter judgment for Carlson Wegoma in this matter as follows:

    A.    Award Carlson Wegoma damages in an amount of $22,430.77;

    B.    Award Carlson Wegoma double or treble damages, pursuant to M.G.L. c. 93A;

    C.    Award Carlson Wegoma applicable interest and costs (including attorneys' fees); and

    D.    Award such further relief as this Court finds just and proper.

CARLSON WEGOMA, LLC
a/k/a Wegoma, Inc.,

By its attorneys,

Lee T. Gesmer (BBO #190260)
Kurt Bratten (BBO #644730)
Gesmer Updegrove LLP
40 Broad Street
Boston, Massachusetts 02109
(617) 350-6800

Date: July 2, 2004

## Certificate of Service

I hereby certify that on the 2nd day of July 2004, a copy of the foregoing document was sent by overnight mail to Laurence S. Moss, Ho & Moss, 68 Harrison Avenue, Fifth Floor, Boston, MA 02111.

*[signature]*
Kurt E. Bratten