UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11296 MLW

```
************************************
DIAMOND WINDOWS & DOORS, Inc.  }
        Plaintiff               )
                                )
                                )
                                )
                                )
CARLSON WEGOMA, LLC             )
a/k/a Wegoma, Inc.              )
************************************
```

**DEFENDANT-IN-COUNTERCLAIM'S ANSWERS TO THE COUNTERCLAIM**
**(starting on p. 9 of the Defendant's Answer and Counterclaim)**

1. This paragraph makes a statement identifying the defendant in the original action and on information and belief this Defendant-in-Counterclaim understands and relies on this to be a correct identification of one of the parties in this lawsuit.

2. The Defendant-in-Counterclaim admits that this is a fair and accurate description of the Plaintiff in this action. Said Plaintiff shall hereafter be referred to as "Defendant-in-Counterclaim" for the purpose of responding to this Counterclaim.

**Jurisdiction and Venue**

3. The Defendant-in-Counterclaim agrees that this Honorable Court has jurisdiction over the Counterclaim as provided under 28 U.S.C. par. 1332.

4. The Defendant-in-Counterclaim agrees that this Honorable Court provides the proper venue for this Counterclaim as provided by 28 U.S.C. par. 1391(a).

**Factual Background**

5. The Defendant-in-Counterclaim agrees that it received a copy of the Sales Order Acknowledgement from Plaintiff-in-Counterclaim on or about May 2003 (hereafter the "Sales Order Acknowledgement") but denies that a

contract was formed because there was no meeting of the minds between the parties as to the sum and substance of the requirements of the THX machine.

6. The Defendant-in-Counterclaim denies that the Tab A attachment as provided by the Plaintiff-in-Counterclaim is a true and accurate copy of the understanding of the parties on or about May 2003.

7. The Defendant-in-Counterclaim agreed that it would pay Plaintiff-in-Counterclaim a total sum of $152,000.00 for a machine that will include the T-slot function.

8. The Defendant-in-Counterclaim denies that this is a fair and accurate description of what it was promised for the sum of money totaling $135,150.00.

9. The Defendant-in-Counterclaim denies that it paid The Plaintiff-in-Counterclaim $152,000.00. Instead, Defendant-in-Counterclaim that it had paid Plaintiff-in-Counterclaim a total of $157,000.00.

10. The Defendant-in-Counterclaim confirmed statements made in this paragraph 10 that it did pay over to the Plaintiff-in-Counterclaim three separate payments in the respective amount of $45,600.00, $76,000.00 and $31,400.00 for a total sum of $153,000.00. In addition, it had paid an additional $4,000.00 on or about September 2003.

11. The Defendant-in-Counterclaim denies the allegations made in this paragraph 11.

12. The Defendant-in-Counterclaim can neither admit nor deny the allegations in this paragraph since the exact description of the May Sales Order Acknowledgement involved and how it was modified lies at the heart of this lawsuit.

13. The Defendant-in-Counterclaim denies that it was ever under an affirmative duty to educate and inform the Plaintiff-in-Counterclaim about how to "configure its products to meet Diamond's needs and requirements" since the Plaintiff-in-Counterclaim promised that it knew how to configure such a machine to meet the Defendant-in-Counterclaim's needs.

14. The Defendant-in-Counterclaim affirms that certain "drawings and documentations" were sent to Plaintiff-in-Counterclaim by the Defendant-in-Counterclaim's vendor but denies that "the technical drawing . . . made no reference to T-slots."

15. The Defendant-in-Counterclaim affirms that it did not supply Plaintiff-in-Counterclaim with any "technical specifications concerning" the manufacture of the machines but denies that it had any affirmative duty to supply Plaintiff-in-Counterclaim with such information.

16. The Defendant-in-Counterclaim states that on or about August or September, 2003 an invitation was made by the Plaintiff-in-Counterclaim to visit its factory in Twinsburg, Ohio and denies the remaining allegations contained in this paragraph.

17. The Defendant-in-Counterclaim denies the allegations in this paragraph 17. It states however that Defendant-in-Counterclaim could not get away from its major business season and instead discussed what preconditions needed to be satisfied before the THX machine was to be shipped to the Defendant-in-Counterclaim.

18. The Defendant-in-Counterclaim states that although the machine was delivered on or about September, 2003, the technician to install the THX machine did not come to the Defendant-in-Counterclaim's factory until sometime in November, 2003.

19. The Defendant-in-Counterclaim admits that among the items shipped and received but denies that it was the machine that it had ordered.

20. The Defendant-in-Counterclaim admits that Plaintiff-in-Counterclaim installed said THX machine in Diamond's facility and denies the remaining allegations.

21. The Defendant-in-Counterclaim admits that it informed Plaintiff-in-Counterclaim of the failures of the THX machine and why this machine failed to conform to what was promised, namely a T-slot capability.

22. The Defendant-in-Counterclaim affirms only part of the allegations in this paragraph. Among its several complaints was the one that the machine did not perform the T-slot function as promised.

23. The Defendant-in-Counterclaim denies the allegations in this paragraph.

24. The Defendant-in-Counterclaim denies the allegations in this paragraph.

25. The Defendant-in-Counterclaim denies the allegations in this paragraph.

26. The Defendant-in-Counterclaim admits only that the Plaintiff-in-Counterclaim did come to its factory after the Plaintiff-in-Counterclaim was informed about the non-conforming nature of the machine that was sent, but Defendant-in-Counterclaim denies that the Plaintiff-in-

Counterclaim contacted the Defendant-in-Counterclaim "numerous times."

27. The Defendant-in-Counterclaim admits that said letter was sent dated December 12, 2003 but denies that the false promises that the agents of the Plaintiff-in-Counterclaim made was the only matter discussed in said letter.

28. The allegations in this paragraph 28 do not call for a response since said letter once properly authenticated and introduced into evidence will "speak for itself."

29. The Defendant-in-Counterclaim admits only that the Plaintiff-in-Counterclaim was afforded an opportunity to perform and to deliver what was promised, namely a machine with T-slot function.

30. The Defendant-in-Counterclaim admits that Plaintiff-in-Counterclaim tried to add the T-slot function by demanding more money from the Defendant-in-Counterclaim and denies the remaining allegations in this paragraph 30 as it has no way of ascertaining the truth of said statements contained therein.

31. The Defendant-in-Counterclaim denies the allegations made in this paragraph 31.

32. The Defendant-in-Counterclaim admits that the Plaintiff-in-Counterclaim was given an opportunity to make its machine conform to what was agreed in May of 2003.

33. Denied. The document at Tab B on the original Answer and Counterclaim is a copy of what was sent to the Defendant-in-counterclaim but it was prepared by the Plaintiff-in-Counterclaim and omits several additional parts to the agreement that if this T-slot function did not perform as expected, the Defendant-in-Counterclaim will not pay for said modification to the THX machine and expect a full refund of the money paid up to that time.

34. The Defendant-in-Counterclaim admits that Plaintiff-in-Counterclaim was given an opportunity to make the THX machine conform to what was agreed in May of 2003 and promised in the marketing materials that were given to the Defendant-in-Counterclaim and on which it relied with agreeing to order equipment from the Plaintiff-in-Counterclaim.

35. The Defendant-in-Counterclaim agrees with this allegation in part in so far as Defendant-in-Counterclaim promised to pay over an additional $20,000.00 on the condition that the T-slot function performs as agreed

and that if it did not, Defendant-in-Counterclaim will not pay for said modification and do expect a complete refund of the money paid.

36. The Defendant-in-Counterclaim is without information to affirm the date on which the machine was received by the Plaintiff-in-Counterclaim but admits that Defendant-in-Counterclaim did cause said machine to be returned to the Twinsburg, Ohio factory during this time period.

37. The Defendant-in-Counterclaim admits that it "shipped sample sashes ("Sample Sashes") to Carlson Wegoma for the purpose of having the Sample Sashes processed through the modified THX Machine and [subsequently] returned to Diamond for approval and prior to the shipping of the machine back to the Defendant-in-Counterclaim."

38. The Defendant-in-Counterclaim admits that the THX Machine was changed or mechanically altered by the Plaintiff-in-Counterclaim and denies that it was modified to meet the requirements of the Defendant-in-Counterclaim.

39. The Defendant-in-Counterclaim neither admits nor denies this allegation since it was not present and has no knowledge of when said THX Machine was allegedly used to process the sashes that were sent.

40. The Defendant-in-Counterclaim admits that it received said processed sashes sometime in March, 2004 but denies the remaining allegations in this paragraph.

41. The Defendant-in-Counterclaim denies the allegations in this paragraph but states that it informed the Plaintiff-in-Counterclaim that said processed sashes represented the manufacturing outcome with the understanding that the T-slot function will operate in a manufacturing environment efficiently and process 400+/- sashes per shift that it desired from the very beginning in May 2003.

42. The Defendant-in-Counterclaim admits that said altered THX machine was shipped to Defendant-in-Counterclaim in Massachusetts.

43. The Defendant-in-Counterclaim admits that said altered THX machine was received by the Defendant-in-Counterclaim in Massachusetts.

44. The Defendant-in-Counterclaim denies that it agreed to pay for any additional parts and service[s] related to the THX machine.

45. The Defendant-in-Counterclaim denies the allegations contained in this paragraph 45.

46. The Defendant-in-Counterclaim admits that it still has the altered THX machine on its premises in Massachusetts.

47. The Defendant-in-Counterclaim admits that it refuses to send any additional money to the Plaintiff-in-Counterclaim after the delivery of the altered machine.

48. The Defendant-in-Counterclaim denies that it is in debt to the Plaintiff-in-Counterclaim in the amount of $22,430.77.

49. The Defendant-in-Counterclaim admits that the Plaintiff-in-Counterclaim has demanded that the Defendant-in-Counterclaim pay a sum money equal to $22,430.77 in addition to the $157,000.00 already paid over to the Plaintiff-in-Counterclaim.

50. The Defendant-in-Counterclaim neither admits nor denies, the Plaintiff-in-Counterclaim's understanding of Ohio statutory law.

51. The Defendant-in-Counterclaim denies the allegations contained in this paragraph 51 because there was no meeting of the minds of the parties with respect to the requirements of the machine.

52. The Defendant-in-Counterclaim denies the allegations contained in this paragraph 51 because there was no meeting of the minds of the parties with respect to the requirements of the machine.

53. The Defendant-in-Counterclaim neither admits nor denies said statement about what Plaintiff-in-Counterclaim's restocking policy was in May of 2003.

54. The Defendant-in-Counterclaim denies that any consideration of what the restocking fee would be was never discussed as part of the May 2003 agreement between the parties.

55. The Defendant-in-Counterclaim affirms that several computer generated documents prepared by the Plaintiff-in-counterclaim that were sent to Defendant-in-Counterclaim on several occasions between May of 2003 and the Spring of 2004. The Defendant-in-Counterclaim denies that these computer generated documents are complete memorializations of the understanding between the parties.

56. The Defendant-in-Counterclaim denies this allegation because the Plaintiff-in-Counterclaim has not kept its promises.

57. The Defendant-in-Counterclaim incorporates by reference the answers to the allegations contained in paragraphs 1-56 of the Counterclaim as though the same were fully set forth herein.

58. The Defendant-in-Counterclaim denies the allegations contained in this paragraph.58.

59. The Defendant-in-Counterclaim denies the allegations contained in this paragraph 59.

60. The Defendant-in-Counterclaim denies the allegations contained in this paragraph 60.

61. The Defendant-in-Counterclaim denies the allegations contained in this paragraph 61.

62. The Defendant-in-Counterclaim incorporates by reference the answers to the allegations contained in paragraphs 1-62 of the Counterclaim as though the same were fully set forth herein.

63. The Defendant-in-Counterclaim denies the allegations contained in this paragraph 63.

64. The Defendant-in-Counterclaim denies the allegations contained in this paragraph 64.

65. The Defendant-in-Counterclaim denies the allegations contained in this paragraph 65.

66. The Defendant-in-Counterclaim incorporates by reference the answers to the allegations contained in paragraphs 1-65 of the Counterclaim as though the same were fully set forth herein.

67. The Defendant-in-Counterclaim affirms the allegations contained in this paragraph 67.

68. The Defendant-in-Counterclaim affirms that it is a corporation incorporated in the Commonwealth of Massachusetts for the purpose of manufacturing doors and windows.

69. The Defendant-in-Counterclaim denies the allegations contained in this paragraph 69.

70. The Defendant-in-Counterclaim denies the allegations contained in this paragraph 70.

C. COUNT III: This Court must not find for Plaintiff-in-Counterclaim under M.G.L. ch. 93A because Defendant-in-Counterclaim engaged in no deceptive act or acts whatsoever and made no representations to the Plaintiff-in-Counterclaim that said Plaintiff-in-Counterclaim might reasonably rely on to its detriment. The alleged damages claimed by the Plaintiff-in-Counterclaim must not be awarded and certainly no multiple damages are fair and appropriate under these facts.

        DIAMOND WINDOWS & DOORS Mfg., Inc.
        (Defendant-in-counterclaim)

        By its attorneys,

        /s/ Laurence S. Moss

        Laurence S. Moss (BBO # 548420)
        Widdy S. Ho (BBO # 543747)
        Ho & Moss, Attorneys
        68 Harrison Avenue, 5th floor
        Boston, MA 02111
        (617) 728 4949 FAX 617 728 4947

July 20, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Answer to the Counterclaim was sent by first class mail, postage prepaid to Mr. Kurt Bratten, Esq. of Gesmer Updegrove LLP, 40 Broad Street, Boston, MA 02109.

_____
Laurence S. Moss, Esq.